IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCUS DEWAYNE COLEMAN,          )
#207223,                                          )
                                                       )
            Plaintiff,                            )
                                                       )
v.                                                   )          CASE NO. 2:20-CV-323-WKW-CSC
                                                       )
NICHOLAS HALL, et al.,                   )
                                                       )
            Defendants.                       )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.      INTRODUCTION

Plaintiff Marcus Dewayne Coleman filed this *pro se* 42 U.S.C. § 1983 action alleging an incident of excessive force involving four prison officials at Elmore Correctional Facility. *See* Doc. 1. Specifically, the Complaint alleges that, in March 2020, Defendants Nicholas Hall, Charles Mosley, Anthony Murphy, and Eli Deramus were "verbally and physically aggressive" with Plaintiff; struck Plaintiff "in the head with a metal weapon that created a bloody mess"; and "viciously assaulted and brutalized" Plaintiff. *Id*. at 2. As relief, he seeks monetary damages and "that any unlawful disciplinary received in this action be expunged from his institutional file and all records." *Id*. at 3.

On June 10, 2020, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims (Doc. 9), which Defendants did on October 16, 2020 (Doc. 25). In their Special Report, Defendants move for summary judgment (*Id*. at 8) and provide supporting evidentiary materials (Docs. 25-1 through 25-4). Defendants later filed

supplements to their Special Report with additional evidentiary materials. Docs. 28, 37. On November 6, 2020, the Court issued another Order directing Plaintiff to file a response to Defendants' filings (Doc. 30), which the Court received on February 3, 2021 (Doc. 36).

In its November 6 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendants' Special Report, as supplemented, and Plaintiff's response as a motion for summary judgment and response. Doc. 30 at 3. No objections were filed. Accordingly, the undersigned will now construe the Special Report as a motion for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendants.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

2

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   RELEVANT FACTS[1]

The following facts derive from Plaintiff's verified Complaint (Doc. 1); the sworn or verified evidentiary materials attached to Defendants' Special Report and supplements thereto (Docs. 25-1 through 25-4; 28-1 through 28-3; 37-1); and Plaintiff's verified response (Doc. 36).

The Complaint provides the following factual allegations in their entirety:

> On March 18, 2020, at approximat[e]ly 5:55 p.m. at Elmore Correctional Facility, in dormitory C-2, Defendants [Hall, Murphy, Deramus, and Mosley] responded to a call concerning [Plaintiff]. Officers arrived on the scene and became both verbally and physically aggressive with [Plaintiff]. Captain Floyd observed [Defendant] Murphy striking [Plaintiff] in the head with a metal weapon that created a bloody mess. [P]laintiff was further viciously assaulted and brutalized by officers. He, [P]laintiff, was then immediat[e]ly escorted to the . . . Health Care Unit covered in blood, and had to receive a total of ten staples being placed in his head.

Doc. 1 at 2.

In response, Defendants provide evidence of the following version of events:

On March 18, 2020, at approximately 5:58 p.m., Correctional Lieutenant Kandra Davis reported to C2-Dorm after being requested by Defendant Deramus. Doc. 25-1 at 1. Lieutenant Davis observed that the dorm was in an agitated state. *Id*. When Lieutenant Davis questioned the cause of the dorm's behavior, Plaintiff became verbally disruptive and belligerent towards her by cursing and throwing his hands in various motions. *Id*.

---

[1] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

Lieutenant Davis decided to remove Plaintiff from the dorm so that his actions would not cause further disruptive behavior from other inmates. *Id*.

Plaintiff was ordered to report to the entrance door. *Id*. Defendant Mosley stood behind Plaintiff as Plaintiff was escorted to the entrance door, where he abruptly stopped. *Id*. The entrance was not secured. *Id*. Plaintiff refused several direct orders by Defendant Mosley to exit the door. *Id*. Defendant Mosley placed the palm of his hand in the center of Plaintiff's back in an attempt to guide him out the door when Plaintiff turned aggressively toward Defendant Mosley, with his left elbow directed toward Defendant Mosley's face, and then pushed Defendant Mosley back with his hand in Defendant Mosley's chest. *Id*. Defendant Mosley grasped Plaintiff by the arm in another attempt to escort him out of the dorm, at which point Plaintiff grasped Defendant Mosley by his shirt and caused Defendant Mosley's glasses to fall off. *Id*.

Defendants Hall and Murphy assisted with restraining Plaintiff, who was aggressively resisting. *Id*. Defendants Mosley, Hall, and Murphy and Plaintiff fell outside the entrance door to the ground, where Plaintiff continued to resist. *Id*. Defendant Murphy avers that he "never struck [Plaintiff] with a weapon of any kind in the head or anywhere else on his body." Doc. 28-3. Instead, he testifies that Plaintiff hit his head on the ground when Defendant Murphy and another officer executed a "two on one take down" of Plaintiff. *Id*. Thereafter, restraints were applied to Plaintiff. Doc. 25-1 at 1.

Plaintiff was immediately transported to Staton Health Care Unit where he received a medical assessment. *Id*.; *see also* Doc. 1 at 2. He received swelling to the left temple area, three lacerations, and redness. Docs. 25-1 at 2, 3; 28-1 at 14; 36-1 at 1–3. No other injuries

were voiced or noted. *Id.* Defendants Mosley and Deramus both reported that they smelled alcohol on Plaintiff's breath at the time of the altercation. Doc. 25-1 at 2. Defendant Hall received a small laceration and swelling to the top of his left hand, Defendant Murphy received swelling to his right forefinger, and Defendant Mosley received no injuries. *Id.* Plaintiff later received disciplinary action for failing to obey "several direct orders" from Defendant Mosley and for assaulting Defendant Mosley. Doc. 28-2 at 2–3, 8–9.

In response to Defendants' filings, Plaintiff avers:

On March 18[,] 2020, I were assaulted by serveral officer[]s from Elmore . . . where I rec[ei]ved (10) staples to my head and I were the only one hurt. I were given an order to exit the dorm when I were assaulted and hit in the head by [Defendant] Murphy with some unknown object.[] I'm the only one hurt[.] [sic]

Doc. 36 at 1. He further states that "there many discrepancy in the condicting [sic] statement made by each officer" in Defendants' sworn affidavits. *Id.*

## IV.   DISCUSSION

### a.   To the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress

abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.[2] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity).

b.  **To the extent Plaintiff seeks any additional relief, he has failed to establish a genuine issue of material fact as to an Eighth Amendment excessive force claim.**

To succeed on an Eighth Amendment excessive force claim, Plaintiff must demonstrate that force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (citation omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 8 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, the Court considers the following five factors:

> (1) the extent of the injury, (2) the need for application of force, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, (4) the relationship between the need and the amount of force used, and (5) any efforts made to temper the severity of a forceful response.

---

[2] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n. 3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

*Hall v. Santa Rosa Corr. Inst.*, 403 F. App'x 479, 481 (11th Cir. 2010) (citing *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)). Under this analysis, Plaintiff may avoid summary judgment "only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain." *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987).

The Eleventh Circuit has specifically recognized that, when evaluating whether a particular use of force was excessive, courts must "give broad deference to prison officers acting to preserve discipline and security." *Jean-Denis v. Mason*, 857 F. App'x 495, 499 (11th Cir. 2021) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)). Additionally, "prison officers generally are authorized to use force when a prisoner repeatedly fails to obey an order." *Jean-Denis*, 857 F. App'x at 499 (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008)); *see also Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019). "Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (citing *Danley*, 540 F.3d at 1307).

Accepting Plaintiff's evidence as true and drawing all reasonable inferences in his favor, the record demonstrates that Plaintiff was disruptive and belligerent toward prison officials and was cursing and throwing his hands in various motions; that he refused to obey numerous orders from Defendant Mosley to exit the dorm; that he turned aggressively toward Defendant Mosley, with his elbow directed toward Defendant Mosley's face, and

then pushed Defendant Mosley in the chest; that, thereafter, he grasped Defendant Mosley by his shirt, causing Defendant Mosley's glasses to fall off; and that he aggressively resisted restraint, even after he was wrestled to the ground by prison officials. At some point during the altercation, Defendant Murphy hit Plaintiff with an unknown object, which made Plaintiff bleed. Plaintiff was then immediately escorted to the Health Care Unit, where he received ten staples in his head.

Upon consideration of these facts and the above five factors, the record fails to demonstrate that Defendants' conduct rose to the level of "wantonness in the infliction of pain." *See Brown*, 813 F.2d at 1188. The Court will assume, for purposes of this Recommendation, that the first factor—the extent of Plaintiff's injury—weighs in Plaintiff's favor. However, the other four factors weigh plainly in favor of Defendants. As to the second factor, there was a clear need for application of force, as Plaintiff does not refute that he was disruptive, belligerent, and aggressive; that he refused to obey numerous orders and resisted restraint; or that he pushed, grabbed, and swung his elbow at Defendant Mosley. Indeed, in his response, Plaintiff specifically admits that he was "given an order to exit the dorm" (Doc. 36 at 1), and he wholly fails to dispute Defendants' evidence that he refused that order. *See Sears*, 922 F.3d at 1209 ("Given [Plaintiff's] admitted failure to obey commands and his resistance to being handcuffed, some use of force was necessary to maintain or restore order.").

As to the third factor, Plaintiff posed a reasonably perceived threat to the safety of staff and other inmates, as the undisputed record once again demonstrates that he was repeatedly physical with Defendant Mosley; that he aggressively resisted the other officers

10

who attempted to restrain him; that other inmates in his dorm were in an agitated state; and that the door to the dorm was not secured. As to the fourth factor, the record fails to demonstrate that the need for force and the amount used were disproportionate. Although Plaintiff claims, and the Court accepts as true, that Defendant Murphy hit Plaintiff "with some unknown object," it is undisputed that this occurred while Plaintiff was "aggressively resisting" restraint and failing to obey repeated commands of prison officials. *See Bennett*, 898 F.2d at 1533 ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."). The record does not indicate that Defendant Murphy struck Plaintiff more than once or any more forcefully than was necessary to subdue Plaintiff. As such, the evidence fails to "go[] beyond a mere dispute over the reasonableness of the force used." *See Brown*, 813 F.2d at 1188.

Finally, as to the fifth factor, the record demonstrates that numerous efforts were made to temper the severity of a forceful response. First, as Plaintiff at least partially admits, Defendant Mosley verbally ordered Plaintiff to exit the dorm several times. He further placed the palm of his hand on Plaintiff's back in an attempt to guide him out the door, at which time Plaintiff turned and pushed him. Thereafter, he grasped Plaintiff by the arm in a further attempt to escort him out of the dorm, at which time Plaintiff grasped his shirt and knocked his glasses off. Thus, Defendant Mosley made numerous attempts to restore order and enforce compliance without use of force. Moreover, after force was used, Plaintiff was immediately escorted to the Health Care Unit for examination. *See Natty v. Walrath*, No. 7:11-CV-27, 2012 WL 2573434, at *6 (M.D. Ga. June 12, 2012)

11

("Defendants attempted to temper the severity of a forceful response by providing several verbal commands to Plaintiff . . ., by using the smallest amount of force possible, and by providing Plaintiff with medical treatment following the use of force.").

Because Plaintiff admits that Defendants issued him an order and does not refute Defendants' evidence that he was belligerent, aggressive, physically threatening, and repeatedly non-compliant throughout the altercation at issue, the Court cannot find that the force used by Defendants violates the Eighth Amendment. Even accepting that Defendant Murphy struck Plaintiff with an unknown object and made him bleed, that does not, under these circumstances and without more, rise to the level of an Eighth Amendment violation. There is simply no evidence that any Defendant applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *See Whitley*, 475 U.S. at 320–21; *Hudson*, 503 U.S. at 8. Accordingly, because Plaintiff has failed to demonstrate excessive force in violation of the Eighth Amendment, Defendants are entitled to summary judgment on this claim.

## V.   CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1.     Defendants' Special Report (Doc. 25), which the Court construes as a motion for summary judgment, be GRANTED;

2.     Judgment be ENTERED in favor of Defendants; and

3.     This case be DISMISSED with prejudice.

It is further ORDERED that, on or before **August 25, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual

12

findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 11th day of August, 2023.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE